64-08/DPM/MAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
STOLT TANKERS B.V. (f/k/a STOLT-NIELSEN                           **08 CIV.  4382 (SAS)**
TRANSPORTATION GROUP B.V.),

                              Plaintiff,

        -against-

GEONET ETHANOL, LLC,

                              Defendant.

-------------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE ATTACHMENT


FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street, 24th floor
New York, New York 10005
(212) 425-1900

Don P. Murnane, Jr.
Manuel A. Molina
 Of Counsel

NYDOCS1/307570.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                          ii

PRELIMINARY STATEMENT                                                         1

BACKGROUND FACTS                                                              2

    A.    The Underlying Claims                                       2
    B.    New York Arbitration and the Rule B Attachments             3

ARGUMENT

    POINT I

        STOLT HAS MET ITS BURDEN TO SHOW WHY
        THE ATTACHMENT SHOULD BE MAINTAINED                          3

    POINT II

        GEONET CANNOT BE FOUND WITHIN THE
        SOUTHERN DISTRICT OF NEW YORK FOR
        PURPOSES OF RULE B                                           5

        A.    GEONET Cannot Be Served Within the Southern
            District of New York                                    6
        B.    GEONET Has No Actual Jurisdictional Presence
            in the District                                        12

    POINT III

        THE SOUTHERN DISTRICT OF TEXAS IS NOT A
        "CONVENIENT FORUM" – TEXAS HAS NO
        JURISDICTION TO ADJUDICATE CLAIMS SUBJECT
        TO NEW YORK ARBITRATION                                     14

        A.    STOLT's Claims Against GEONET Are Subject to
            New York Arbitration                                   16
        B.    Neither STOLT nor GEONET Is Present in the
            Southern District of Texas                             18
            i.    STOLT is not present in Texas                     19
            ii.    GEONET is not present in Texas                   19

CONCLUSION                                                                   23

# TABLE OF AUTHORITIES

## Cases

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006) .............. *passim*

*Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th  2000) ............................................ 20

*Centauri Shipping Ltd. v. Western Bulk Carriers*, 528 F. Supp. 2d 186 (S.D.N.Y. 2008) ............. 9

*Centauri Shipping Ltd. v. Western Bulk Carriers*, 528 F. Supp. 2d  197 (S.D.N.Y. 2008) .......... 11

*Chilean Line Inc. v. United States*, 344 F.2d 757 (2d Cir. 1965) ................................................... 8

*Dolco Inves. Ltd. v. Moonriver Dev. Ltd.*, 486 F. Supp. 2d 261 (S.D.N.Y. 2007) ......................... 4

*Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers GmbH*, 409 F. Supp. 2d 427

    (S.D.N.Y. 2006) ...................................................................................................... 12, 13

*Far Eastern Shipping Co. v. Progress Bulk Carriers, Ltd.*, 2008 A.M.C. 721

    (S.D.N.Y. 2008) ...................................................................................................... 11, 13

*Filia Compania Naviera S.A. v. Petroship, S.A.*, No. 81-7515, 1982 U.S. Dist. LEXIS 9404

    (S.D.N.Y. March 19, 1982) ............................................................................................. 7

*Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119

    (S.D.N.Y 1979) ................................................................................................. 5, 6, 8, 9

*Jazini v. Nissan Motor Co. Ltd.*, 148 F.3d 181 (2d Cir. 1998) ..................................................... 20

*Kerr-McGee Refining Corp. v. M/T TRIUMPH*, 924 F.2d 467 (2d Cir. 1991) ............................ 17

*La Blanca v. Ostermuchner*, 664 F.2d 65 (5th Cir. 1981) ............................................................ 21

*Mariac Shipping Co. Ltd. v. Meta Corp.*, NV, No. 05-2224, 2005 U.S. Dist. LEXIS 10315

    (S.D.N.Y. May 31, 2005) ............................................................................................... 14

*Moses H. Cone Memorail Hospital v. Mercury Construction Corp.*, 460 U.S. 1,

    24-25 (1983) .................................................................................................................. 17

*Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34 (5th Cir. 1990) ............................................. 17

OGI *Oceangate Transportation Co. Ltd. v. RP Logistics PVT. Ltd.*, No. 06-9441, 2007

    U.S. Dist. LEXIS 46841 (S.D.N.Y. June 26, 2007).......................................................... 17, 18

*Paramount Carriers Corp. v. Cook Industries Inc.*, 465 F. Supp. 599 (S.D.N.Y. 1979) ............... 7

*Rolls Royce Industrial Power (India) v. M.V. FRATZIS M*, 1996 A.M.C. 390

    (S.D.N.Y. May 23, 1995).................................................................................................. 15, 16

*Ronda Ship Management Inc. v. Doha Asian Games Organising Committee*, 511 F. Supp.

    2d 399 (S.D.N.Y. 2007) ........................................................................................................ 4, 5

*Royal Swan Nav. Co. v. Global Container Lines, Ltd.*, 868 F. Supp. 599 (S.D.N.Y. 1994) ........ 15

*Seatrans Shipping Corp. v. Interamericas Marine Transport Ltd.*, No. 97-2329,

    1997 U.S. Dist. LEXIS 5665 (S.D.N.Y. April 29, 1997) ......................................................... 6

*Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963)............................. 5

*Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06-1979, 2006 U.S. Dist. LEXIS

    95870 (S.D.NY. Aug. 15, 2006) ......................................................................................... 3, 4

*Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.*,

    No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) ................................. 4, 5

*United States v. Cia. Naviera Continental, S.A.*, 178 F. Supp. 561 (S.D.N.Y. 1959) ................... 9

*Venconsul N.V. v. Tim Int'l N.V.*, No. 03-53-87, 2003 U.S. Dist. LEXIS 13594

    (S.D.N.Y. Aug. 6, 2003) ........................................................................................................ 14

*Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002).............................................. 6, 7

## Other Authorities

9 U.S.C. § 8.................................................................................................................................. 14

Plaintiff STOLT TANKERS B.V. (f/k/a STOLT-NIELSEN TRANSPORTATION GROUP B.V.) ("STOLT" or "Plaintiff"), by and through its counsel Freehill Hogan & Mahar, LLP, respectfully submits this Memorandum of Law in opposition to the Motion of Defendant GEONET ETHANOL LTD. ("GEONET" or "Defendant") to vacate.

## PRELIMINARY STATEMENT

STOLT has satisfied all the Rule B requirements necessary to maintain the challenged attachments. GEONET's argument that it is "found within the district" irremediably fails because GEONET has conceded that it has appointed no agent for the service of process residing in the Southern District. In addition, GEONET's contention lacks merit because it is not disputed that GEONET does no business, solicits no business and has no offices, employees, bank accounts, real estate or phone listings anywhere in the State of New York. Hence, for purposes of Rule B, GEONET has no true presence in the Southern District.

Finally, its last resort argument that a Texas court is a more convenient forum for the adjudication of the parties' commercial dispute is specious. GEONET omits from its arguments to the Court the undisputed fact that STOLT's claims against GEONET are subject to New York arbitration. Texas is thus clearly not a "jurisdiction convenient to the plaintiff" within the *Aqua Stoli* dicta on which GEONET relies. As a matter of federal law, a Texas court would not have jurisdiction to adjudicate STOLT's arbitral claims. As a result, even assuming *arguendo* that both parties were "present" in Texas, such presence is immaterial when the parties have agreed to arbitrate in New York. Moreover , GEONET has not met its burden of proof demonstrating that both STOLT and GEONET are "present" in Texas.

Simply put, GEONET's motion is utterly devoid of any merit. This Court should summarily deny it in all respects.

## BACKGROUND FACTS

The relevant background facts are relatively straightforward and uncontested. STOLT and GEONET entered into a Contract of Affreightment, dated June, 1 2007 ("the COA"). (Affidavit of Don P. Murnane, dated June 26, 2008 ("Murnane Aff."), Ex. 1, ¶4). The COA contemplated the transportation of GEONET's ethanol cargoes onboard STOLT's vessels from GEONET's facility in Saint Croix, US Virgin Islands to various ports on the East Coast of the United States. The COA also required that GEONET would ship a minimum of 11,000 MT of cargo twice per month. In the event that GEONET failed to nominate the guaranteed minimum cargo quantities, GEONET was required to pay deadfreight charges. (Murnane Aff., Ex. 1, ¶4). STOLT performed two liftings of GEONET's ethanol cargoes that were carried onboard the M/T STOLT TAURUS, as per the terms of the COA. In early November 2007, GEONET abruptly canceled the COA. (Murnane Aff., Ex. 1, ¶7).

### A.    *The Underlying Claims*

As a result of GEONET's wrongful repudiation of the COA, STOLT sustained damages in the form of: (a) aggregate demurrage charges in the sum of $138,531.25; and (b) deadfreight which, as of May 8, 2008, totaled the sum $1,455,068. STOLT's deadfreight claim, however, continues to increase on a daily basis since the COA was not due to expire until September 2008. (Murnane Aff., Ex. A, ¶¶9-11). Despite Plaintiff's mitigation efforts, Stolt has sustained a weighted average loss of $6,587.00 per day from the date of GEONET's repudiation up to and including May 8. (Murnane Aff., Ex. 1, at Ex.A). Although STOLT has demanded payment from GEONET in the sum of $1,455,068 for its deadfreight claim and the sum of $138,531.25 for its demurrage claim. GEONET has, in breach of the COA with STOLT, failed to pay the amounts demanded by STOLT. (Murnane Aff., Ex. 1, ¶11).

**B.  *New York Arbitration and Plaintiff's Rule B Attachments***

The COA called for the parties' commercial disputes to be referred to New York arbitration.   STOLT, on or about March 17, 2008, demanded arbitration from GEONET. Further, in an effort to obtain security for its claims, STOLT, on May 9, 2008, filed the instant Rule B action and applied for the issuance of process of maritime attachment and garnishment, seeking to restrain the sum of $2,173,871.00 (*i.e.* the demurrage and deadfreight claims, plus interest and costs) of GEONET's property. (Murnane Aff., Ex. 1, ¶¶15-16).  By Order dated May 13, 2008,  this Court granted STOLT's application.  Shortly thereafter, STOLT commenced service of the writ of maritime attachment upon various New York banks.  On or about May 15, 2008, Deutsche Bank advised that, pursuant to the Order and writ of attachment, it had restrained two wire transfers in the sums of $1,973,871.00 and $200,000.00 belonging to GEONET. STOLT, as required by this Court's Local Rule B.2, promptly provided Notice of Attachment to GEONET's New York counsel.

**ARGUMENT**

**POINT I**

**STOLT HAS MET ITS BURDEN TO SHOW WHY THE
ATTACHMENTS SHOULD BE MAINTAINED**

To sustain its burden and defeat a motion to vacate, Plaintiff need only demonstrate that: (1) the cause of action arises within the Court's admiralty jurisdiction; (2) the Defendant cannot be found within the District; and (3) the Defendant has property within this District. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006).

Although the *Aqua Stoli* Court did not exactly state what a Plaintiff must show to meet this burden, Courts of this District have adopted a *prima facie* standard.  *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.NY. Aug. 15,

2006); *Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.*, No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007); *Dolco Inves. Ltd. v. Moonriver Dev. Ltd.*, 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007). Under this *prima facie* standard, a Rule E(4)(f) hearing is not intended to, and should not, be a fact-intensive inquiry into the underlying merits of Plaintiff's claim (especially where the dispute is subject to arbitration). All that the Plaintiff needs to defeat a Rule E(4)(f) Motion to vacate is a proper Verified Complaint. *Tide Line*, 2006 U.S. Dist. LEXIS 95870, *15-16; *Transportes Navieros*, 2007 U.S. Dist. LEXIS 50260, *11.

As Chief Judge Wood has stated:

> Thus to show that it has a *prima facie* claim, a Plaintiff need not provide any supporting evidence; its Complaint should suffice. Furthermore *Aqua Stoli* implies that a Plaintiff is likewise not required to provide evidence showing that it has a claim against Defendant to carry its burden under Supplemental Rule E(4)(f).

2006 U.S. Dist. LEXIS 95870, *15-16 (emphasis supplied); *Ronda Ship Management Inc. v. Doha Asian Games Organising Committee*, 511 F. Supp. 2d 399, 403-04 (S.D.N.Y. 2007) (under the *prima facie* pleading standard, "the Court ***looks only to the Complaint*** to determine whether the Plaintiff has alleged a valid admiralty claim against the Defendant").

Here, GEONET's only challenge to the validity of STOLT's attachments is that STOLT has failed to establish that GEONET cannot be "found within the District." As will be set forth more fully below, this argument lacks merit. Accordingly, as Plaintiff has satisfied all technical requirements of Rule B, the challenged attachments should be maintained. Therefore, Defendant's motion should be denied in its entirety. *Ronda*, 511 F. Supp. at 403-05; *Transportes Navieros*, 2007 U.S. Dist LEXIS 50260, *12.

## POINT II

### GEONET CANNOT BE FOUND WITHIN THE SOUTHERN DISTRICT OF NEW YORK FOR PURPOSES OF RULE B

It is well-established that an attachment under Rule B can only be obtained if a defendant is not "found within the District" at the time of the filing of plaintiff's verified complaint. This is made clear from a plain reading of the Rule itself:

> If a defendant is not found **within the district** when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Rule B(1)(a) (emphasis supplied).

GEONET's motion ignores well-settled Second Circuit law that requires district courts to apply a two-prong test in determining whether a defendant can be found within the district, namely; (1) whether the defendant is subject to *in personam* jurisdiction; **and** (2) if so, whether the defendant can be found for service of process in the district. *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963); *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 122 (S.D.N.Y 1979). **Both prongs must be satisfied in order for a defendant to be "found."** The continuing validity of this two-prong test was confirmed by the Second Circuit's 2006 decision in *Aqua Stoli*. 460 F.3d at 443.

Here, GEONET cannot satisfy either of the two prongs. First, it does not dispute that it cannot be served with process in the Southern District of New York. (Declaration of J. Brent Baker, dated June 18, 2008 (Baker Decl."), ¶9, Ex. 3). This fact alone defeats GEONET's challenge to STOLT's attachments. Second, while GEONET argues it has satisfied the *in personam* prong of the *Seawind* test simply because it has registered to do business with the New

York Secretary of State, GEONET does not dispute that it has never had any offices, employees, telephone listings, or done any business anywhere in the State of New York, much less within the Southern District.  Hence, GEONET cannot be "found within the district" in terms of the personal jurisdiction prong either.

### A. GEONET Cannot Be Served within the Southern District of New York

This Court has been consistent in applying the two-prong test for determining whether or not a defendant is present in the District in both the personal jurisdiction and service of process senses.  As Judge Leval explained in 1979:

> The test is quite arbitrary in its specification of the circumstances in which the maritime attachment may be used. No matter how convincingly demonstrated the plaintiff's need for security, it will not authorize attachment against a defendant who is present in the district **in both senses**.  On the other hand, the fact that a defendant can be subjected to the court's in personam jurisdiction **by virtue of the presence of a resident agent for service of process will not suffice to defeat the attachment if the defendant is not otherwise present in the district in the jurisdictional sense; nor will the fact that the defendant is present in the jurisdictional sense suffice if he cannot be found for service of process within the district**.  This test amounts to a somewhat arbitrary compromise which assumes that the plaintiff will not require the protection of an attachment for security, nor should the defendant should be subjected to it, if the defendant is present in both senses, and assumes on the other hand that the plaintiff's interests are not adequately protected despite the ability to perfect in personam jurisdiction if the defendant is not present in both senses.

*Integrated*, 476 F. Supp. at 122 (emphasis supplied).

As the Second Circuit has stated, the rationale underlying maritime attachments is twofold: "First, attachment provides a means to assure satisfaction if a suit is successful; the second purpose is to insure a defendant's appearance in an action, an aspect of attachment inextricably linked to a plaintiff's substantive right to recover." *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).  Indeed, it is well-settled that a Rule B attachment may be used for the sole purpose of obtaining security.  *Seatrans Shipping Corp. v. Interamericas*

*Marine Transport Ltd.*, No. 97-2329, 1997 U.S. Dist. LEXIS 5665 (S.D.N.Y. April 29, 1997);

*Filia Compania Naviera S.A. v. Petroship, S.A.*, No. 81-7515, 1982 U.S. Dist. LEXIS 9404

(S.D.N.Y. March 19, 1982); *Paramount Carriers Corp. v. Cook Industries Inc.*, 465 F. Supp. 599

(S.D.N.Y. 1979).  Here, STOLT has properly obtained security for its claims being prosecuted in

New York arbitration.

Twenty seven years after *Integrated* was decided, the Second Circuit in *Aqua Stoli*

unambiguously confirmed Judge Leval's cogent and emphatic application of the two-prong test

as being necessary to implement the historic policies underlying maritime attachments, namely,

"to permit the attachment of assets **wherever they can be found** and not to require the plaintiff

to **scour the globe to find a proper forum for suit or property of the defendant** sufficient to

satisfy a judgment."  460 F.3d at 443 (emphasis supplied).  As the *Aqua Stoli* Court forcefully

remarked:

> We agree with Judge Leval that this test is somewhat "arbitrary," presuming that a
> defendant's presence in the district vitiates a plaintiff need for security regardless
> of the actual financial state of the defendant. . . . To be sure, such a hard-and-fast
> rule may occasionally sweep too broadly. We, think, however, that Congress
> chose a **determinate rule rather than a flexible standard to ensure that**
> **attachments may be obtained with a minimum of litigation** . . .  In our view,
> this rule comports with the historical role of maritime attachments, and we see no
> support in the history of attachment case law for the less definitive test imposed
> by the district court in this case.

460 F.3d at 443-44 (emphasis supplied).

There is no dispute that GEONET does not have an agent for service of process residing

in the Southern District of New York.  GEONET readily concedes that "the Secretary of State is

designated as agent for the service of process [and it] has had a designated agent for service of

process within the state, Capitol Services, during this time."  (Baker Decl., ¶9).  Both the

Secretary of State and Capitol Services are located in Albany. (Baker Decl., Ex. 1, Certificate of

Change of GEONET identifying Capitol Services' address as 1218 Central Avenue, Suite 100

Albany, NY 12205). Because GEONET cannot satisfy the service of process prong, GEONET

cannot be "found within the District" within the meaning of Rule B.

Judge Leval's *Integrated* decision is squarely on point. There, the defendant sought to

vacate a Rule B attachment issued in the Southern District of New York by arguing that it was

subject to service of process in the District since service could be effected "upon the Secretary of

State of New York." 476 F. Supp. at 124. The *Integrated* Court flatly rejected this argument:

"I conclude that the availability of service upon the Secretary of State outside the district does

not defeat the attachment." *Id.* In so holding, Judge Leval pointed to the Advisory Committee

Notes of 1966 to Rule B as being dispositive of the service of process issue:

> The Court of Appeals in *Chilean Line Inc. v. United States*, 344 F.2d 757 (2d Cir.
> 1965), reviewing the preliminary draft of the proposed amendments to the Rules
> of Civil Procedure, speculated in dictum that application of Rule 4(f) [now Rule
> 4(k)] . . . might be held in the future to narrow the availability of the maritime
> attachment.
>
> However, the drafters did not adopt such a rule in the final draft of Admiralty
> Rule B. The Advisory Committee's Notes of 1966 to Supplemental Rule B
> explicitly states the Advisory Committee's conclusion, after considering such a
> change in Rule B, that the maritime attachment remedy should not be limited by
> the provisions of Rule 4(f) [now Rule 4(k)]. Courts in this district have since
> followed the drafters' intent and Professor Moore agrees with this result.

476 F. Supp. at 124.[1] In *Aqua Stoli*, the Second Circuit Court cited with approval Judge Leval's

holding that service upon the New York Secretary of State in Albany is not the equivalent of

---

[1] The Advisory Committee Notes of 1966 provide in pertinent part:

> A change in the context of the practice is brought about by Rule 4(f), which will enable summons to be
> served throughout the state instead of, as heretofore, only within the district. The Advisory Committee
> considered whether the rule on attachment and garnishment should be correspondingly changed to permit
> those remedies only when the defendant cannot be found within the state and **concluded that the remedy
> should not be so limited**.
>
> The effect is to enlarge the class of cases in which the plaintiff may proceed by attachment or
> garnishment although jurisdiction of the person of the defendant may be independently obtained. This is

being amenable to service in the Southern District of New York. 460 F.3d at 442 n.4 and at 445

n.4 ("We have no occasion to discuss further [the found within the district] requirement, and we

do not see that the district courts have experienced any confusion in its application. *See*

*Integrated*, 476 F. Supp. at 122 (explaining this requirement)").

GEONET misguidedly relies upon *Centauri Shipping Ltd. v. Western Bulk Carriers*, 528

F. Supp. 2d 186 (S.D.N.Y. 2008). Judge Sullivan's *Centauri Shipping* decision is factually

distinguishable, however, as it was not disputed there that the defendant could be served with

process in the Southern District:

> The Court notes that plaintiff has conceded that the second prong of the *Seawind* test
> has been satisfied in this action. Specifically, it is undisputed that WBC KS **has a**
> **designated agent for service of process in this District.**

528 F. Supp. 2d at 190 n.5 (emphasis supplied). In fact, Judge Sullivan reiterated this crucial

factor later in his decision:

> In addition, the Court notes that, ultimately, the *Integrated Container* Court
> declined to vacate the maritime attachment in that case because the defendant did
> not satisfy the service of process prong of the *Seawind* test. **By contrast in the**
> **instant case, as noted *supra*, it is undisputed that WBC KS has satisfied the**
> **service of process prong of the Seawind test.**

528 F. Supp. at 191 n.7   Thus, the attachment in *Centauri Shipping* was vacated because the

defendant established both prongs of the Rule B presence test, under Second Circuit controlling

precedent. Here GEONET cannot establish either.

---

possible at the present time where, for example, a corporate defendant has appointed an agent within the
district to accept service of process but is not carrying on activities there sufficient to subject it to
jurisdiction, *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963), or where,
though the foreign corporation's activities in the district are sufficient to subject it personally to the
jurisdiction, **there is in the district no officer on whom process can be served**, *United States v. Cia.
Naviera Continental, S.A.*, 178 F. Supp. 561 (S.D.N.Y. 1959).

Process of attachment or garnishment will be limited to the district.

GEONET argues that Judge Sullivan in his subsequent decision of November 7, 2007 "clearly held registration alone with the New York Secretary of state to be sufficient to find the defend present in the district" for purposes of Rule B, thereby suggesting that mere registration satisfies both prongs of the presence test. But even a cursory reading of the October 12, 2007 decision reveals GEONET's analysis to be incorrect. In his October 12 decision, which denied plaintiff's motion to stay the vacatur of the attachment during the pendency of its appeal, Judge Sullivan explained that on September 7, 2007, he had issued an oral decision from the bench vacating the attachment, a decision that he himself described as "the vacatur decision." 528 F. Supp. 2d at 188. Further, Judge Sullivan also explained the legal bases behind the "vacatur decision":

> As discussed in the *vacatur decision*, Rule B provides that, for an order of attachment to issue, the plaintiff must establish that the defendant cannot be "found within the district." Rule B(1)(a). The Second Circuit has held that this requirement presents **"a two pronged inquiry**: First, whether (the respondent) can be found with the district in terms of jurisdiction, **and** second, if so, whether it can be found for service of process." [*Seawind*]. The Court notes that plaintiff has conceded that the second prong of the Seawind test has been satisfied in this action. Specifically it is undisputed that WBC KS has a designated agent for service of process in this District. **However, the parties have vigorously disputed whether defendant was present for jurisdictional purposes within the District at the time of attachment. In the *vacatur decision*, the Court found that defendant was present for <u>jurisdictional purposes</u>**.

528 F. Supp. 2d at 190 n.5 (emphasis supplied). It is therefore clear that Judge Sullivan properly followed Second Circuit precedent in holding that both prongs of the "found within the district" inquiry must be established by the Rule B defendant and that the only issue before him was the *in personam* jurisdiction prong, not the service of process prong. Thus, the only issue for Judge Sullivan to adjudicate, for purposes of defendant's motion to vacate, was whether or not the defendant had satisfied the "jurisdictional" prong of the *Seawind* test. It was within the specific context of the "jurisdictional prong" that Judge Sullivan agreed with the defendant that the mere

10

registration to do business in New York satisfied the prong. Contrary to GEONET's argument, Judge Sullivan did not change his prior ruling in his November 5, 2007 decision, which involved issues of whether the Court would impose sanctions upon plaintiff's counsel and whether it would grant counsel's request for a protective order. ). 528 F. Supp. 2d 197 (S.D.N.Y. 2008). In fact, Judge Sullivan stated at the beginning of that decision: "The Court has recited the underlying facts of this action elsewhere and assumes the parties' familiarity therewith (citing to "the vacatur decision" and the October 12, 2007 decision). 528 F. Supp. 2d at 198. Judge Sullivan went on to reiterate that: "Specifically, the Court found that WBC KS was 'present' in the district under the *Aqua Stoli* test on the ground that it was licensed as foreign corporation in the New York State" (again citing to the "vacatur decision" and the October 12, 2007 decision (528 F. Supp. 2d 186)). It is therefore clear that Judge Sullivan was referring to jurisdictional prong of the *Seawind* test. Here, GEONET admittedly has no agent for service of process in the Southern District. GEONET's motion should thus be denied even under the *Centauri Shipping* decision.

For similar reasons, GEONET's reliance upon *Far Eastern Shipping Co. v. Progress Bulk Carriers, Ltd.*, 2008 A.M.C. 721 (S.D.N.Y. 2008) is misguided. The defendant in that case satisfied the service of process prong: "This record clearly establishes that PBC had an agent for service of process present in the district." 2008 A.M.C. at 723.

Accordingly, because GEONET has no agent for service of process in the Southern District, it cannot be found within the District within the purview of Rule B. On this ground alone, the attachments of GEONET's property are proper and should be maintained. GEONET's motion should therefore be denied *in toto*. *Aqua Stoli*, 460 F.3d at 444 ("If Gardner Smith's assets are presently located in the Southern District and Gardner Smith cannot be 'found' within

the district, Aqua Stoli is entitled under Rule B to attach those assets in aid of jurisdiction and to serve as security").

## B.  GEONET Has No Actual Jurisdictional Presence in the District

In addition, GEONET arguably cannot meet the *in personam* prong of the Rule B presence test. As conceded by GEONET, there is currently a split of authority within the SDNY as to whether mere registration with NYS Department of State is insufficient to create a presence within the District for purposes of Rule B's personal jurisdiction prong. *Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers GmbH*, 409 F. Supp. 2d 427 (S.D.N.Y. 2006).

In *Erne Shipping*, the court held that, in denying defendant's motion to vacate, a certificate authorizing a defendant to do business in New York was insufficient to create the jurisdictional presence required under Rule B.    The defendant, like GEONET here, had registered to do business in New York. The Court, however, found that defendant had no offices, no employees, no phone listings, no property located in the State of New York and had done no advertising.   Essentially, defendant's presence in the district was contrived, consisting of a ministerial filing, without any concomitant true business activity being conducted.

To determine whether defendant's presence was sufficient to defeat the Rule B attachment, the court examined the underlying policies behind maritime attachments, namely, to provide security for the plaintiff if a suit is successful and (2) to assure the defendant's appearance.   In the court's view, mere technical registration to do business without more undermined those twin-goals:

> First, a mere filing for authorization to do business proves no security to plaintiff. While we recognize that a rule requiring actual presence in the district (rather than just consent) also does not necessarily provide security, at least actual presence makes it far more likely that assets might be located in the district to levy upon should the suit be successful. A voluntary filing under the Business Corporation Law, by contrast, has little or no correlation with the presence of assets.  Second,

with respect to assuring the defendant's appearance in the action, the mere act of filing provides no assurance that suit could be instituted in the future since the authorization can be surrendered unilaterally at any time. Thus, if we granted vacatur and if [the defendant] thereafter withdrew its filing, [plaintiff] would have no means of obtaining jurisdiction over [the defendant] if it were ever necessary to bring suit against [defendant] – for example to enforce an arbitration award. In sum, neither policy underlying Rule B is vindicated by predicating jurisdiction on a mere filing for authorization to do business under the Business Corporation Law.

409 F. Supp. 2d at 438.

Like the defendant in *Erne Shipping*, GEONET has no true presence in the district and no assets that can be used to satisfy any eventual arbitration award entered against GEONET should the court vacate the attachment. In point of fact, GEONET does no business, solicits no business, and has no offices, employees, bank accounts or phone listings in the Southern District or, for that matter, anywhere else in the State of New York. Conspicuously absent from the declaration of Mr. Baker, GEONET's CEO, is any statement that GEONET is doing any business in New York or that it has tangible assets such as real estate property or bank accounts anywhere in New York. Quite the contrary, Mr. Baker readily admits that GEONET, through an **affiliated company** (Geonet Utilities, Inc.), is allegedly present only in Texas, **not** New York. (Baker Declaration, ¶8).

GEONET relies upon *Far Eastern Shipping*, but in that case, unlike here, the district court determined that the defendant was actually conducting business in the State of New York:

Moreover, PBC itself was jurisdictionally present in the district under New York law. . . . In this case, the contract at issue was negotiated in New York by PBC's managing agent, with the assistance of PBC's New York based broker, and called for contract payments to be made to Far Eastern in New York. Furthermore, PBC had continuous business contacts with New York both directly and via its managing agent.

2008 A.M.C. at 723. No such "contacts" are present in this case. At best, GEONET's "presence" in New York is a mere legal construct. Its corporate registration, without any

evidence that it is carrying out business activities in the State of New York should not be deemed

sufficient to satisfy the "jurisdictional" prong under Rule B.    Accordingly, STOLT respectfully

submits that GEONET has not satisfied the second prong of the "found within the district"

inquiry.  GEONET's motion should therefore be denied on this separate and independent ground

alone.[2]

## POINT III

### THE SOUTHERN DISTRICT OF TEXAS IS NOT A "CONVENIENT FORUM" – TEXAS HAS NO JURISDICTION TO ADJUDICATE CLAIMS SUBJECT TO NEW YORK ARBITRATION

GEONET's second contention for vacating the attachments is that the Southern District

of Texas is a more "convenient forum" than the Southern District of New York because,

allegedly both parties are found in Texas.    The false issue of "convenience" is irrelevant where,

as here, the COA at issue obligates GEONET to arbitrate at New York, and STOLT has

commenced arbitration and, per 9 U.S.C. § 8, attached GEONET's assets to secure its arbitral

claims.  The Texas courts do not have jurisdiction to adjudicate claims subject to New York

arbitration. Further, contrary to GEONET's argument neither STOLT nor GEONET are present

in the Southern District of Texas.

---

[2] The agreement to arbitrate in New York does not subject GEONET to general personal jurisdiction in this district. *Mariac Shipping Co. Ltd. v. Meta Corp.*, NV, No. 05-2224, 2005 U.S. Dist. LEXIS 10315 (S.D.N.Y. May 31, 2005). There, Judge Kaplan rejected plaintiff's argument that a New York arbitration clause contained in the charter parter subjected the defendant to personal jurisdiction:

> To be sure, an agreement to arbitrate in New York at least arguably is a consent to personal jurisdiction here for purposes relating to the enforcement of the arbitration agreement.  Even assuming the continuing vitality of that principle, however, the consent goes no father than proceedings relating to enforcement of the arbitration agreement.

2005 U.S. Dist. LEXIS 10315, * 2-3. *See also Venconsul N.V. v. Tim Int'l N.V.*, No. 03-53-87, 2003 U.S. Dist. LEXIS 13594 , *8-9 (S.D.N.Y. Aug. 6, 2003) (well settled that "when party agrees to arbitrate a dispute in New York such agreement is deemed consent to jurisdiction of the courts for purposes of relating to enforcing the arbitration").

The *Aqua Stoli* Court stated in dicta that vacatur of a Rule B attachment "**may** be warranted when the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction **convenient to the plaintiff**."  460 F.3d at 442 (emphasis added).  Texas is not "convenient to" STOLT where GEONET has contractually agreed with STOLT to submit all disputes to arbitration at New York.

The genesis of the Second Circuit's discussion in *Aqua Stoli* regarding the potential for vacatur of attachments against defendants found in convenient fora can be traced to several district court decisions from the Southern District, all stemming from Judge Baer's decision in *Royal Swan Nav. Co. v. Global Container Lines, Ltd.*, 868 F. Supp. 599 (S.D.N.Y. 1994).  In *Royal Swan*, Judge Baer granted an attachment against Global Container Lines.  Global (which was located in Garden City in the Eastern District) moved to vacate the attachment on several grounds, including that it was in fact "found" in the Southern District and that in any event the attachment was abusive or unfair.  Judge Baer plainly was concerned that he had been misled by plaintiff's counsel as to the nature of Global's presence in the Southern District (and plaintiff's counsel's knowledge of same), and demanded that plaintiff provide some justification as to why the attachment was fair and appropriate.  Plaintiff's counsel **failed to respond** and Judge Baer utilized his discretion to vacate the attachment on the basis that it was unfair under the particular circumstances of that case.

*Royal Swan*, though, must be viewed in its proper historic context and must be read side-by-side with Judge Haight's decision in *Rolls Royce Industrial Power (India) v. M.V. FRATZIS M*, 1996 A.M.C. 390 (S.D.N.Y. May 23, 1995).  The *M/V FRATZIS  M* was decided only a few months after *Royal Swan*, and importantly involved a Rule B attachment **against the very same defendant** as in *Royal Swan*.  Judge Haight opined that Judge Baer's decision was correct,

agreeing specifically that an admiralty judge has some discretion to determine the fairness of an attachment and to vacate attachments that are unfair or abusive. In analyzing the facts before him, however, and recognizing that Global was found in the adjacent Eastern District of New York, Judge Haight found nothing unfair in the Rule B attachment against Global by the attaching party and therefore maintained the attachment.

Here, as in the *M/V FRATZIS M* decision, there is absolutely no evidence (and GEONET can present none) that the challenged attachments are abusive or that STOLT has misled the Court concerning GEONET's presence (or lack thereof) in the Southern District of New York. Accordingly, there are no facts whatsoever that would warrant this Court's exercise of discretion to vacate the STOLT attachments. The attachments are proper and should be maintained.

## A. STOLT's Claims Against GEONET Are Subject to New York Arbitration

GEONET deliberately ignores a crucial fact that summarily disposes of its argument that the Southern District of Texas is a "convenient forum" for the resolution of STOLT's claims. The COA, which is the basis of STOLT's arbitral claims against GEONET, unambiguously calls for New York arbitration and the application of U.S. admiralty and New York State law:

### 44. ARBITRATION CLAUSE

This Charter party shall be governed by and construed in accordance with the General Maritime Law of the United States and to the extent that application of state law becomes necessary, then the laws of the State of New York to apply . . . and disputes of whatever nature arising out of or in connection with this Charter Party shall be referred to three persons at New York . . . .

(Declaration of Andrew Adams, dated June 26, 2008 ("Adams Decl."), Exhibit A).

Under well-settled Second Circuit and Fifth Circuit jurisprudence, Clause 44 is a "broad" arbitration clause, and any New York or Texas district court would hold that a lawsuit brought in the Southern District of Texas violates the parties' arbitration agreement and would order the

parties to arbitrate their commercial dispute in New York. *Kerr-McGee Refining Corp. v. M/T TRIUMPH*, 924 F.2d 467 (2d Cir. 1991) (the phrase "any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration" deemed to create broad clause and district court erred by not confirming arbitration award); *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34 (5th Cir. 1990) (words "any and all disputes" deemed to create broad arbitration clause and lower court erred by not compelling parties to arbitrate in accordance thereto). Indeed, such is the strong federal policy favoring arbitration that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including problems] concerning the construction of the contract language itself." *Moses H. Cone Memorail Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). Accordingly, GEONET's argument that the Southern District of Texas is a "convenient forum" is wrong as matter of law and fact and should be summarily rejected by the Court, as it deliberately ignores the parties' agreement to arbitrate in New York. *See Integrated*, 476 F. Supp. at 123 (upholding validity of attachment where "two agreements called for submission to the jurisdiction of the Courts of New York; the third called for submission to arbitration in New York with New York law to apply" since defendant could not be served in the Southern District of New York).

GEONET in support of its position cites OGI *Oceangate Transportation Co. Ltd. v. RP Logistics PVT. Ltd.*, No. 06-9441, 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 26, 2007). *OGI*, however, is factually inapposite. In *OGI*, before the plaintiff filed its Rule B action in New York, the defendants had commenced proceedings in Kolkatta, India and arrested the plaintiff's vessel to obtain security for their claim against the plaintiff. In fact, the plaintiff appeared in the Kalkotta proceedings and succeeded in lifting the vessel's arrest. As a result, the district court, in vacating the attachment, found: "both [plaintiff] and the Defendants were present in the same

17

jurisdiction during the arrest proceedings, namely Kolkatta. [Plaintiff] did make an appearance during the proceedings and even contemplated posting security to release the arrest." 2007 U.S. Dist. LEXIS 46841, *16. As important, the district court also determined that New York could not be a "convenient forum" because: (1) the Indian court had authorized the vessel's arrest, and plaintiff's Rule B claim was based on the alleged wrongful arrest of the vessel in India, "thereby implicating issues of international comity"; and (2) it was unlikely that "United States law' would apply to plaintiff's wrongful arrest claim. 2007 U.S. Dist. LEXIS 46841, *17. Viewing the particular facts of the case as a whole, the district court concluded: "Thus when combined with these comity considerations, the convenience issue speaks even more strongly against the exercise of jurisdiction and therefore in favor of vacating the attachment." 2007 U.S. Dist. LEXIS 46841, *18.

No such facts or legal issues are remotely implicated in this case. Here GEONET voluntarily agreed with STOLT to arbitrate in New York. It should thus not now be permitted to claim Texas is more convenient to STOLT as plaintiff. Moreover, it is undisputed that the COA at issue calls for the application of U.S. admiralty and New York State law. In short, Texas courts would not have jurisdiction to adjudicate claims subject to New York arbitration, and Texas is not more convenient within the meaning of the *Aqua Stoli* dicta on which GEONET reiles.

**B. Neither STOLT nor GEONET Is Present in the Southern District of Texas**

Alternatively, even if STOLT's claims against GEONET were not subject to New York arbitration, GEONET's argument that the Southern District of Texas is a "convenient forum" also fails because STOLT and GEONET are not present in Texas.

*i.*      ***STOLT is not present in Texas***

The declaration of Mr. Adams summarily disposes of GEONET's argument. Mr. Adams attests that STOLT is a Netherlands corporation that is not registered to do business in Texas and has no offices in Texas. (Adams Decl., ¶2). STOLT, therefore, is not present in Texas as erroneously hypothesized by GEONET.

Precisely because GEONET relies on conjecture to speculate that STOLT might be present in Texas, it requests that this Court permit discovery on this issue. This request is improper and betrays the frivolous nature of GONET's position. It is clear that the *Aqua Stoli* Court did not intend that a plaintiff who had properly obtained an attachment was required, in addition to the normal B requirements, to disprove that another forum was more convenient than the one where assets were located. As the Second Circuit stated: "Rule B does not require Aqua Stoli to go to Australia or any other country to sue Gardner Smith to obtain security as long as Gardner Smith's assets are available here." 460 F.3d at 444. Indeed, to require otherwise would unwarrantedly force plaintiff to go beyond the Verified Complaint, especially as in this case, where STOLT has satisfied all the technical requirements of Rule B  and defendant has not presented any evidence whatsoever that STOLT has abused the process. Accordingly, for this reason as well, GEONET's specious "convenient forum argument' should be rejected by the Court.

*ii.*     ***GEONET is not present in Texas***

GEONET's own evidence supports the conclusion that GEONET is also not present in Texas. Mr. Baker concedes that GEONET has no offices in Texas. In fact, he merely states that he and GEONET's Corporate Secretary "maintain offices with an affiliated company, Geonet Utilities, Inc." (Baker Decl., ¶3). This admission by itself defeats GEONET's argument that it is

present in Texas. It is well settled Texas law (and New York law for that matter) that a foreign

parent/affiliate is not subject to the personal jurisdiction of the forum state merely because its

subsidiary is present or doing business there. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d

208 (5th  2000); *Jazini v. Nissan Motor Co. Ltd.*, 148 F.3d 181 (2d Cir. 1998).

Also, the "Application for Registration of a Foreign Limited Liability Company" which

GEONET filed with the Secretary of State of Texas on June 19, 2007 (over a month **after** Mr.

Baker executed the COA), independently supports the view that GEONET has no offices

anywhere in the State of Texas. In responding to Entry 8 on the registration application , which

requests GEONET to supply its "principal office address," GEONET provides its St. Croix,

Virgin Islands address. (Baker Decl., Ex.1).    Moreover, in responding to Entry 11, which

requests GEONET to supply the name and address of "each governing person" for the company,

GEONET identifies Mr. Baker and Mr. Phil A. Dalton (who admittedly is no longer with the

company). *Id.* Crucially, Messrs. Baker and Dalton are listed as being residents in St. Croix,

U.S. Virgin Islands. *Id.* This documentation belies Mr. Baker's statement that Mr. Baker, even

before the negotiation of the COA began, "maintained offices with an affiliated company in

Houston." (Baker Decl., ¶7)

Further, in responding to Entries 9A and 9C, which request GEONET to identify the

name of the registered agent and its business address, GEONET lists Capitol Corporate Services

in Austin, Texas. Capitol Services is a national company that acts as the registered agent for

service of process for corporations doing business in many of the 50 United States. (*See*

www.duanemorris.com/site/capitolcorporateservices.html). This documentation also belies Mr.

Baker's statement that Mr. Baker and Ms. Terrell Wilson are authorized to accept service of

process for GEONET. Conspicuously absent from Mr. Baker's declaration is any statement or

20

proof that GEONET has amended its registration filings with the Texas Secretary of State to identify a GEONET office in Houston or that GEONET has amended its registration records to identify either Mr. Baker or Ms. Wilson as agents for service of process in Houston. Indeed, if one were to perform a due diligence search in the Southern District of Texas, the only information it would find is that GEONET, while registered to do business in Texas, has no offices anywhere in the State of Texas and has appointed an agent in Austin, Texas to accept service of process. Austin is located in the Western District of Texas. Under Fifth Circuit law, as under Second Circuit jurisprudence, a defendant cannot be "found within the district" if it has not appointed an agent for service of process in the District where the order of attachment issued. *La Blanca v. Ostermuchner*, 664 F.2d 65 (5th Cir. 1981).

Further, a search of the corporate filing of GeoNet Utilities, Inc. with the Secretary of the State of Texas indicates that it too does not list a Houston office. GeoNet Utilities' June 29, 2007 Application for Registration of a Foreign Limited Liability Company identifies the address of the company's principal office as "One Hibiscus Alley, P.O. Box 6347, St. Thomas, Virgin Islands." (Murnane Aff., Ex. 2). Further, Messrs. Baker and Dalton, the company's "governing persons," are identified as residents of St. Thomas (only 10 days earlier, these same officers had been listed as residents in St. Croix for purposes of GEONET's Application).

Finally, as Mr. Andrew Adams attests, GEONET acted at all relevant times hereto as a business entity based in St. Croix, Virgin Islands. (Adams Decl., ¶¶4-8; Exs. A-D). At no time was Mr. Adams ever advised by GEONET that it had offices in Houston. In point of fact, during the short period of time the COA was in effect from June 1, 2007, up to GEONET's repudiation of the contract on November 1, 2007, freight payments due from GEONET to STOLT under the COA were remitted from GEONET's bank in the Virgin Islands, and indeed Mr. Baker's

November 1, 2007 letter to STOLT (in which Mr. Baker advised STOLT that GEONET was canceling the COA) originated from the company's St. Croix, Virgin Islands address. Nowhere does the letterhead indicate the presence of an office in Houston for GEONET.

Independently corroborating the foregoing is an article that appeared on the Virgin Islands Daily News on October 6, 2007 concerning GEONET's new St. Croix facility. (Murnane Aff., Ex. 3, www.virginislandsdailynews.com). The article states that Mr. Baker "hailed St. Croix as the perfect location for the company's operations." *Id.* Indeed, apparently "GeoNet has invested more than $100 million in the development of its St. Croix-based ethanol business" which occupies a "13 acre industrial site" *Id.*

In short, STOLT respectfully submits that there are no facts or legal issues that would require or justify this Court exercising any narrowly circumscribed discretion in this case to vacate the attachments herein. The parties have agreed to New York arbitration and thus Texas is not a "jurisdiction convenient to the plaintiff" within the context of the *Aqua Stoli* dicta. Indeed, presumably GEONET, despite its current allegations of its "presence" in Houston, would not have expressly agreed to New York arbitration if it truly believed Texas were more convenient. Having voluntarily agreed to arbitrate at New York, GEONET should not now be permitted to create a false "convenience" argument in its attempt to fashion some expedient analogy to the *Aqua Stoli* dicta so as to avoid the Rule B attachments. GEONET's motion should therefore be denied in all respects, and the attachments should accordingly be maintained.

## CONCLUSION

For all the foregoing reasons, STOLT respectfully requests that this Court deny

GEONET'S Motion and allow the challenged attachments to remain fully in place, and award

such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      June 27, 2008


                        FREEHILL, HOGAN & MAHAR LLP
                        Attorneys for Plaintiff

By:                                   

                        Don P. Murnane, Jr. (DM 3639)
                        Manuel A. Molina (MM 1017)
                        80 Pine Street
                        New York, New York 10005
                        (212) 425-1900


TO:    EATON & VAN WINKLE, LLP
        Attorneys for Defendant
        3 Park Avenue
        New York, N.Y. 10016

        Attn:    Ted G. Semaya, Esq.
                  Joseph T. Johnson, Esq.
                  (212) 779-9910