UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
STOLT TANKERS B.V. (f/k/a STOLT-
NIELSEN TRANSPORTATION GROUP
B.V.),

                      Plaintiff,

    - against -

GEONET ETHANOL, LLC,

                      Defendant.
------------------------------------------------------- X



OPINION AND ORDER

08 Civ. 4382 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

      On May 13, 2008, this Court granted an order attaching the assets of Geonet Ethanol, LLC ("Geonet"). Geonet now moves to vacate that attachment. For the following reasons, Geonet's motion to vacate the attachment is denied.

## II. BACKGROUND

### A. The Contract of Affreightment

      On June 1, 2007, Stolt Tankers B.V. ("Stolt"), a foreign business entity existing under the laws of the Netherlands,[1] entered into a Contract of

---

    [1]    *See* 6/26/08 Declaration of Andrew Adams, General Manager for Inter-Caribbean Services for Stolt Neilsen USA Inc., in Opposition to Motion to Vacate ("Adams Decl.") ¶ 3.

1

Affreightment ("COA") with Geonet, a business entity organized and existing under the laws of the United States Virgin Islands.[2] Part of Geonet's business involves purchasing hydrous ethanol from Brazil, dehydrating the ethanol at its facility in St. Croix, and then shipping processed anhydrous ethanol to the United States.[3] The COA, which was to last one year from the date of first lifting, contemplated Stolt transporting Geonet's ethanol cargoes to various ports on the eastern seaboard of the United States.[4] The COA required that Geonet provide a minimum of 11,000 metric tons ("mt") of cargo twice per month.[5] If Geonet failed to provide 11,000 mt of cargo, it was required, under the COA, to pay deadfreight charges.[6]

In the event that a difference or dispute should arise under the agreement, the COA contained an arbitration clause mandating arbitration in New York and the application of United States admiralty and New York State law.[7]

---

[2] *See* 6/18/08 Declaration of J. Brent Baker, Chief Executive Officer of Geonet, in Support of Motion to Vacate Attachment ("Baker Decl.") ¶ 2.

[3] *See id.* ¶ 3.

[4] *See* COA, Ex. D to Adams Decl., at 3.

[5] *See id.*

[6] *See* Verified Complaint ("Compl.") ¶ 4.

[7] *See* COA at 15.

Additionally, the COA contained a Force Majeure clause conditioning Geonet's ability to manufacture ethanol fuel upon the "continued availability of necessary raw materials and products from its usual and anticipated suppliers and continued availability of energy supplies to its manufacturing facility in St. Croix, Virgin Islands."[8] Pursuant to the Force Majeure clause, Geonet could cancel the COA without penalty or cost "[i]f the availability of sufficient quantities of such raw materials, products and/or energy supplies from those suppliers is restricted . . . below that necessary to produce fuel ethanol in the amounts nominated in [the COA]."[9]

### B. Geonet's Cancellation of the COA

After the COA took effect, Stolt performed two liftings of Geonet's ethanol cargoes.[10] On or about October 15, 2007, Stolt designated the M/T Stolt Taurus ("the Taurus") for the next lifting; however, in violation of the COA, Geonet failed to provide Stolt with the necessary sailing instructions.[11] In response, Stolt informed Geonet that the Taurus would proceed to the Bahamas

---

[8] *Id.* at 23.

[9] *Id.*

[10] *See* Compl. ¶ 5.

[11] *See id.* ¶ 6.

where it would await Geonet's sailing instructions.[12] The Taurus departed New York for the Bahamas on October 23, 2007.[13] Geonet never provided the requested orders. Eight days later, on November 1, 2007, Brent Baker, Geonet's President and CEO, sent a letter to Stolt declaring Force Majeure, stating that Geonet had "suffered a supply disruption of indefinite duration . . . because ethanol [was] unavailable from Geonet's 'usual and anticipated supplier.'"[14]

Stolt claims that Geonet's failure to provide the guaranteed minimum cargo obligated Geonet to make deadfreight payments totaling $1,455,068.[15] Stolt also claims that during the COA, Geonet incurred demurrage charges reflecting the time Geonet utilized the vessel for loading, discharging, and awaiting orders in excess of the time allotted in the COA.[16] Based on the COA's demurrage rate of $15,500 per day pro rata, Stolt claims that Geonet's aggregate demurrage charges total $138,531.25.[17]

---

[12] *See id.*

[13] *See id.* ¶ 10.

[14] 11/1/07 Letter from Baker to Andrew Adams and Raymond Long, Ex. E to Adams Decl.

[15] *See* Compl. ¶ 9.

[16] *See id.* ¶ 10.

[17] *See id.*

Geonet has thus far refused to pay the outstanding deadfreight and demurrage claims.[18] In response, Stolt has commenced arbitration proceedings against Geonet in New York.[19]

### C. Rule B Attachment

On May 9, 2008, Stolt filed a Verified Complaint seeking attachment of Geonet's assets in the sum of $2,173,871,[20] which includes $1,455,068 in deadfreight charges, $138,531.25 in demurrage charges, $430,271.75 in interest, and $150,000 in legal fees, arbitrator's fees, and costs. This Court granted Stolt's application for attachment on May 13, 2008.[21] Shortly thereafter, Stolt served the writ of maritime attachment on various New York banks. On May 15, 2008, garnishee Deutsche Bank restrained two wire transfers in the sums of $200,000 and $1,973,871.[22] On June 18, 2008, Geonet moved to vacate the writ of maritime attachment.

---

[18] *See id.* ¶ 11.

[19] *See id.* ¶ 12.

[20] *See id.* ¶ 16.

[21] *See* 5/13/08 Order of Attachment, Ex. 2 to Declaration of Ted Semaya, attorney for Geonet, in Support of Motion to Vacate Attachment ("Semaya Decl.").

[22] *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate ("Pl. Mem."), at 3.

## III. APPLICABLE LAW

### A. Vacatur of Maritime Attachment

Maritime attachments serve dual purposes: "(1) to obtain jurisdiction of the [defendant] in personam through [its] property, and (2) to assure satisfaction of any decree in [plaintiff's] favor."[23] Because the two aims may not be separated, "security cannot be obtained except as an adjunct to obtaining jurisdiction."[24]

Supplemental Rules B and E of the Federal Rules of Civil Procedure govern attachment of assets in maritime actions.[25] If the defendant is not present within a district, Rule B allows for the attachment of the defendant's assets up to the amount for which the plaintiff has a valid prima facie claim.[26]

If the court authorizes the attachment of assets, the defendant is entitled, pursuant to Rule E, to "a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated."[27] The Second Circuit has held that, in addition to meeting the service and filing

---

[23] *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963).

[24] *Id.* at 582.

[25] See Fed. R. Civ. P. Supp. Rules B, E.

[26] See Fed. R. Civ. P. Supp. Rule B(1)(a).

[27] Fed. R. Civ. P. Supp. Rule E(4)(f).

requirements of Rules B and E, a plaintiff seeking to show why an attachment should not be vacated must demonstrate that "1) it has a valid prima facie admiralty claim against the defendant;[28] 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment."[29] "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E."[30]

The court must therefore determine "whether [the defendant] could have been found within the district."[31] The Second Circuit has held that this requirement presents a two-pronged inquiry: "First, whether (the [defendant]) can

---

[28] "[T]he majority of courts in this district have held that the standard for determining whether a plaintiff has asserted a 'valid prima facie admiralty claim' is the 'prima facie standard,' rather than the more demanding 'fair probability' or 'reasonable grounds' standards." *Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 331-32 (S.D.N.Y. 2008) (citing *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007)). While there is some division within this district over the question of what constitutes a "valid prima facie admiralty claim," *see id.*, there seems to be little disagreement that the "inquiry focuses on whether the plaintiff has [pled] a claim cognizable in admiralty." *Ronda Ship Mgmt. v. Doha Asian Games Org. Comm.*, 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007).

[29] *Aqua Stoli*, 460 F.3d at 445.

[30] *Id.* at 445 n.5.

[31] *Seawind*, 320 F.2d at 582.

7

be found within the district in terms of jurisdiction, and second, if so, whether it can be found [within the district] for service of process."[32] Under this framework, a maritime attachment will be vacated if the defendant has sufficient contacts with the district so that it is found in the district in the jurisdictional sense and has an agent in the district upon whom service of process could be delivered.[33] The attachment will lie, however, if the defendant fails to satisfy either prong of the inquiry.[34]

Additionally, district courts have limited equitable discretion to vacate maritime attachments that comply with Rule B. In *Aqua Stoli*, the Second Circuit held that:

> a district court may vacate an attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential

---

[32] *Id.*

[33] *See Integrated Container Serv., Inc. v. Starlines Container Shipping, LTD*, 476 F. Supp. 119, 122 (S.D.N.Y. 1979).

[34] *See id.* Because Texas' long-arm statute extends to the outer limits of the Due Process Clause, this opinion focuses only on whether exercising personal jurisdiction is congruent with the Constitutional guarantees of the 14th Amendment. *See Able Fund v. KPMG Accountants NV*, 247 Fed. Appx. 504, 506 n.1 (5th Cir. 2007).

8

judgment, by attachment or otherwise.[35]

## B.  Personal Jurisdiction

The determination of whether a court has personal jurisdiction over a defendant is a two-step process. *First*, "the court must look to the long-arm statute of the forum state."[36] *Second*, even if there is jurisdiction under the long-arm statute, the court must decide whether the exercise of that jurisdiction comports with the requirements of the Due Process Clause of the Constitution.[37]

The Fourteenth Amendment due process inquiry has two components: *first*, the court must determine whether the defendant has minimum contacts with New York sufficient to justify the exercise of personal jurisdiction over the defendant; and *second*, the court must determine whether the exercise of personal jurisdiction is reasonable, thus comporting with "traditional notions of fair play and substantial justice."[38] "The two prongs of the inquiry are interrelated, such that a weak showing of minimum contacts requires a stronger demonstration of

---

[35]  460 F.3d at 445.

[36]  *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

[37]  *See id.*

[38]  *Metropolitan Life*, 84 F.3d at 567-78 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

9

reasonableness."[39] The converse is also true.

The minimum contacts requirement ensures that a defendant is not haled into court "solely as a result of random, fortuitous, or attenuated contacts."[40]

> To establish the minimum contacts necessary to satisfy specific jurisdiction, the plaintiff must show that his claim arises out of or relates to defendant's contacts with the forum state. The plaintiff must also show that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there.[41]

In addition to meeting the minimum contacts test, any exercise of personal jurisdiction must also be reasonable. This requires analysis of the following factors: (1) the burden that the exercise of personal jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in efficient resolution; and (5) the state's interest in promoting

---

[39] *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03 Civ. 917, 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003).

[40] *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted).

[41] *Schottenstein v. Schottenstein*, No. 04 Civ. 5851, 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004) (citing *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998)). The Supreme Court has explained that purposeful availment is the cornerstone of personal jurisdiction – if a defendant has not purposefully availed itself of the "benefits and protections" of the forum's laws, the defendant has little warning that they can be used against it. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

substantive social policies.[42]

Additionally, a "state may assert general jurisdiction – i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts – only where these contacts are 'continuous and systematic.'"[43]

## IV. DISCUSSION

### A. Geonet Is Not Found in the Southern District of New York

Geonet argues that Stolt's writ of maritime attachment must be vacated because for purposes of this motion, it can be found within the Southern District of New York. At the time Stolt applied for the writ of attachment, Geonet was registered with the New York Secretary of State as a foreign limited liability company doing business in the state.[44] In registering, Geonet designated Capitol Services, Inc. of Albany, New York as its agent for whom any process served

---

[42] *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002).

[43] *Id.* at 127. *Accord Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415-16 (1984); *Chew*, 143 F.3d at 29 ("Where the defendant's contacts with the jurisdiction . . . are more substantial . . . it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of plaintiff's injury.").

[44] *See* 6/13/08 Certification of Daniel Shapiro, Special Deputy Secretary of State, Ex. 3 to Baker Decl.

11

against the Secretary of State shall be mailed.[45] According to Geonet, its registration with the New York Secretary of State and its designation of Capitol Services is sufficient for this Court to find it "present" in the Southern District under the two-pronged inquiry set forth in *Seawind Compania, S.A. v. Crescent Line, Inc.* ("*Seawind*"). Stolt argues, in turn, that Geonet fails to satisfy either of the prongs necessary to find that Geonet can be found in the Southern District of New York.

Stolt relies heavily on *Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG*, where a Magistrate Judge of this Court found that authorization to do business in the state as a foreign corporation did not alone satisfy the jurisdiction requirement of Rule B.[46] The court reasoned that despite the "ample New York case law stating that [filing as a foreign corporation with the State] is sufficient to subject a foreign corporation to general jurisdiction for any cause of action in New York State,"[47] Rule B contemplates that a defendant must have an "actual presence in the district," in the form of business activity beyond

---

[45] *See* Geonet's Application to New York State Department of State, Ex. 3 to Baker Decl.

[46] *See* 409 F. Supp. 2d 427, 436 (S.D.N.Y. 2006).

[47] *Id.*

12

mere filing with the state.[48]

Stolt's reliance on *Erne* is unavailing, however, as that decision has not been widely followed.[49] Recent cases have noted that "in evaluating the jurisdictional presence factor under Rule B, the Second Circuit and the majority of district courts in this Circuit have focused principally upon that party's amenability to suit rather than the party's economic and physical activities in the district at issue."[50] These courts have found that registration as a foreign corporation authorized to do business in the state is sufficient to find the defendant in the district in terms of jurisdiction. I therefore conclude that Geonet's registration with the New York Secretary of State satisfies the jurisdictional prong of the *Seawind* test.[51]

---

[48] *Id.* at 438.

[49] *See Marimed Shipping, Inc. v. Persian Gulf Shipping*, No. 08 Civ. 4228, 2008 WL 2698671, at *2 (S.D.N.Y. July 1, 2008) ("*Erne* has since been questioned, however, and several recent cases in [the Southern District of New York] have declined to follow it.").

[50] *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 191 (S.D.N.Y. 2007).

[51] *See Marimed Shipping, Inc.*, 2008 WL 2698671, at *4 (finding the defendant present in the Southern District in the jurisdictional sense by virtue of its registration with the New York Secretary of State to do business in the state as a foreign corporation); *Minmetals Shipping & Forwarding Co. LTD v. HBC Hamburg Bulk Carriers, GMBH & Co. KG*, No. 08 Civ. 3533, 2008 WL 2518709, at *4 (S.D.N.Y. June 24, 2008) (holding that "by virtue of its registration as a

Geonet does not, however, satisfy the test's service prong. In *Integrated Container Services, Inc. v. Starlines Container Shipping, LTD*, the defendant argued that the "service of process requirement is satisfied by plaintiff's ability under Federal Rule Civ. P. 4(f) to institute the action in the Southern District of New York by service, pursuant to the agent's designation, upon the Secretary of State of New York in Albany."[52] The court rejected this argument, holding that the availability of service upon the Secretary of State outside the Southern District does not defeat the attachment.[53] The Second Circuit validated the Court's reasoning in *Aqua Stoli*, citing with approval *Integrated's* discussion of what it means to be found within the district for purposes of maritime attachment.[54]

Here, both the New York Secretary of State and Capitol Services are located outside the Southern District. Because Geonet cannot be served in this

---

foreign corporation authorized to do business in New York State, [defendant] was, at all relevant times, 'found' within this district"); *Integrated*, 476 F. Supp. at 123 (finding that the defendant could be found within the district for jurisdictional purposes based on its registration as a licensed foreign corporation with the New York Secretary of State and on an agreement in which the defendant expressly consented to "the jurisdiction of the courts of New York").

[52]  476 F. Supp. at 124.

[53]  *See id. See also Aqua Stoli*, 460 F.3d at 445 n.4 (citing with approval *Integrated's* discussion of what it means to be found within the district for purposes of maritime attachment).

[54]  *See Aqua Stoli*, 460 F.3d at 445 n.4.

district, it follows that Geonet cannot be found in the Southern District for purposes of this motion.[55]

### B. Equitable Vacatur

Geonet argues that both parties are present in the Southern District of Texas. It therefore urges the Court to exercise equitable discretion and vacate the maritime attachment. Geonet relies on the Second Circuit's explanation in *Aqua Stoli* that "[a] maritime attachment would . . . be properly vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets."[56] Geonet claims that Stolt could obtain in personam jurisdiction over it in the Southern District of Texas, thereby negating the need for Stolt to attach Geonet's funds in the Southern District of New York.

Whether both parties can be found in the Southern District of Texas,

---

[55] Geonet argues that its registration with the New York Secretary of State satisfies the service prong of the *Seawind* test, asserting that in *Centauri Shipping* this Court held registration alone sufficient to find the defendant present in the District. Geonet's reliance is misplaced. In its opinion, the court noted that the parties agreed that the defendant had a designated agent for service of process in the District. *See Centauri Shipping*, 528 F. Supp. 2d at 190 n.5. The court's discussion is limited to the jurisdictional prong of the inquiry, and the defendant's registration with the New York Secretary of State did not independently satisfy the service prong of the *Seawind* test, as Geonet claims.

[56] 460 F.3d at 444-45.

15

however, is of no moment. *Aqua Stoli* recognizes an equitable exception that allows courts to vacate maritime attachments where there is an abuse of process – where a plaintiff attaches defendant's funds in one district where it could have easily brought a suit on the merits against defendant in another district.[57]

That is not the case here. The COA contained a clause mandating New York arbitration in the event that the parties had any differences or disputes. Accordingly, Stolt could not have brought a suit on the merits under the COA against Geonet in the Southern District of Texas even if Geonet was subject to personal jurisdiction there. Thus, Stolt's attachment of Geonet's funds in the Southern District of New York does not constitute an abuse of process that warrants this court to exercise its equitable discretion to vacate the attachment.

## V. CONCLUSION

For the foregoing reasons, Geonet's motion to vacate the attachment is denied. The Clerk of the Court is directed to close this motion (document no. 10 on the docket sheet). A conference is scheduled for November 17 at 4.30pm. `

---

[57] *See Integrated*, 476 F. Supp. at 123 (noting that equitable exception applies "where an attachment is obtained unfairly in one district where a proper lawsuit could be commenced in another district without unfairness or inconvenience.").

16

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         November 3, 2008

## - Appearances -

**For Plaintiff:**

Don P. Murnane, Jr., Esq.
Manuel A. Molina, Esq.
Freehill, Hogan & Mahar LLP
80 Pine Street
New York, NY 10005
(212) 425-1900


**For Defendant:**

Ted G. Semaya, Esq.
Alan Van Praag, Esq.
Joseph T. Johnson, Esq.
Eaton & Van Winkle LLP
3 Park Avenue
New York, NY 10016
(212) 561-3615